# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MODERN FENCE TECHNOLOGIES, INC.,

        Plaintiff,

      v.                              Case No. 08-C-543

QUALIPAC HOME IMPROVEMENT CORP.,

        Defendant.

## DECISION AND ORDER

## I.  BACKGROUND

On June 25, 2008, the plaintiff, Modern Fence Technologies, Inc. ("Modern Fence"), filed an action in the Eastern District of Wisconsin for "infringement of federally registered and common law trademark rights (Counts I and II), false designation of origin under Section 43(a) of the Lanham Act (Count III) and Unfair Competition (Count IV)," against the defendant, Qualipac Home Improvement Corp. ("Qualipac").  (Compl. ¶ 1.)  This court has jurisdiction over the subject matter of the complaint pursuant to 28 U.S.C. § 1338(a).  Both parties have consented to the exercise of jurisdiction by a magistrate judge.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

Currently pending before the court is Qualipac's motion for partial summary judgment based upon non-infringement of the '402 and the '669 Trademark Registrations, its motion for partial summary judgment based upon the functionality of the registrations and fraud on the United States Patent and Trademark Office ("USPTO") in the '668 and '669 Registrations, and finally, its motion to strike portions of certain declarations, portions of Modern Fence's opposition brief, and portions of Modern Fence's counter statement of disputed facts.  All motions have been fully briefed and are ready for resolution.

## II. FACTS

Modern Fence is a corporation engaged in the business of manufacturing, distributing, and selling fence door hinge products. (Compl. ¶ 3.) Qualipac is also a corporation engaged in the business of manufacturing, distributing, and selling fence door hinge products. (Compl. ¶ 12.) Modern Fence asserts that its door hinge products have a distinctive appearance and hinge configuration that Modern Fence has used in commerce since as early as July 21, 1994 and that its distinctive appearance and hinge configuration is protected by multiple United States Trademark Registrations. (Compl. ¶¶ 3, 12.) Modern Fence's complaint alleges that Qualipac began manufacturing, offering for sale, and selling fence door hinge products that include and incorporate the distinctive appearance and configuration of Modern Fence's products, infringing upon Modern Fence's trademark registrations. (Compl. ¶¶ 12-13.)

In response, Qualipac pleads a number of affirmative defenses and counterclaims, the majority of which seek cancellation of the trademark registrations obtained by Modern Fence because of functionality, lack of secondary meaning, and fraud on the USPTO.

### '000 and '668 Configurations: "V" Notch Designs

Modern Fence has asserted four trademark registrations against Qualipac. On January 11, 2005, Trademark registration 2,917,000 ("'000") was registered based on a trademark application Modern Fence filed on October 16, 2003. (Defendant's Proposed Findings of Fact in Support of Motion for Partial Summary Judgment Based Upon Functionality of the Trademarks and Fraud on the USPTO ("DPFOF") ¶ 4.) The '000 mark

> consists of a configuration of a first hinge plate having at least three notches formed therein, a second hinge plate having at least three notches formed therein, one end of a T-member pivotally retained by two tabs extending from the first hinge plate and the other end of the T-member retained by two tabs extending from the second hinge plate.

2

(DPFOF ¶ 5.)  The '000 Registration claims at least three "v" notch designs on the perimeter of the hinge plate.  (DPFOF ¶¶ 5-6.)  At first, the USPTO refused registration of the proposed mark based upon functionality of the mark as well as its nondistinctive configuration.  According to the USPTO, the "proposed three-dimensional configuration mark appears to be functional for the identified goods." (DPFOF ¶ 77.)  Further, the USPTO required Modern Fence to present evidence that the proposed mark had acquired distinctiveness by submitting examples of advertising.  (Kamarei Decl. ¶ 4, Ex. A.)

In response to the USPTO's rejection of the proposed mark due to functionality, Modern Fence indicated that it would "submit a new drawing with the nonfunctional features in solid line and the functional features in dashed lines.  Specifically, the notches in [the] hinge plate are shown in solid line and [the] rest of the hinge is shown in dashed line."  (DPFOF ¶ 78.)  In accordance with its response, Modern Fence submitted a drawing of the front side of the hinge, wherein the notches were drawn in solid lines and the pair of openings as well as the bridge was drawn in dashed lines.  (DPFOF ¶ 7.)  Modern Fence also noted that no design or utility patent application had ever been filed on the hinge.  (Kamarei Decl. ¶ 4, Ex. A.)  In response to the USPTO's rejection with respect to nondistinctive configuration, Modern Fence declared that it had been using the hinge configuration through substantially exclusive and continuous use in commerce since September 30, 1995.  (DPFOF ¶ 10.)[1]

A few years after registration was granted to the '000 configuration, Trademark Registration 3,337,668 ("'668") was registered on November 20, 2007, based on a trademark application that

---

[1]  September 30, 1995 is the date indicated in Modern Fence's application for the '000 Registration.  (Kamarei Decl. ¶ 4, Ex. A. at 21.)  The date that Qualipac proposes in its finding of fact, September 30, 2005, appears to be a typographical error.  (*See* DPFOF ¶ 10.)  Additionally, Margaret Knudson testified that she did not know at the time of signing the declaration the meaning of the term "substantially exclusive."  (DPFOF ¶ 11.)

Case 2:08-cv-00543-WEC   Filed 06/22/10   Page 3 of 25   Document 126

Modern Fence filed on March 28, 2006. (DPFOF ¶ 25.) The '668 Registration is designed with a pair of openings and a centerpiece bridge in the middle of the openings. (DPFOF ¶¶ 28-29.) Specifically,

> [t]he mark consists of a configuration of a first hinge plate having at least three first notches formed on a perimeter thereof and a first pair of openings formed through the first hinge plate; and a second hinge plate having at least three second notches formed in a perimeter thereof and a second pair of openings formed through the second hinge plate.

(DPFOF ¶¶ 26-27.) The '668 Registration claims at least three "v" notch designs on the perimeter of the hinge plate with a pair of openings. (DPFOF ¶¶ 26-28.) In procuring the '668 Registration, Modern Fence submitted a drawing of the configuration to the USPTO in which the pair of openings is drawn in solid lines. (DPFOF ¶ 54.)

On March 22, 2007, Margaret Knudson, Vice President of Modern Fence, signed a declaration in support of the distinctiveness of the '668 configuration, declaring that Modern Fence had been using the '668 configuration substantially and exclusively since May 10, 1998. (DPFOF ¶¶ 32-34.) Margaret Knudson represented to the USPTO that the first date of use for the '668 configuration was July 21, 1994. (DPFOF ¶ 30.) During the course of this action, however, Margaret Knudson admitted that the pair of openings in the hinge plate was not available until 1998 when Modern Fence utilized a laser machine to cut open the tabs in the hinge plate. (DPFOF ¶ 31.)

Additionally, with respect to the '668 Registration, Margaret Knudson represented to the USPTO that Modern Fence disclosed the '668 configuration by advertising the configuration in World Fence News nearly every month since September 1995. (DPFOF ¶ 35.) However, the back side of the '668 configuration was never advertised in World Fence News. (DPFOF ¶ 36.) In addition, according to the unopposed assertion of Qualipac, all six invoices that Modern Fence submitted to the USPTO as proof that the '668 configuration had been advertised in Fence News "were false." (DPFOF ¶ 40.) More specifically, none of the advertisements corresponding to the submitted invoices

4

showed the '668 configuration. (DPFOF ¶¶ 40-41.) Five of the invoices correspond to Modern Fence's advertisements of a hinge with a single opening, as opposed to the pair of openings of the '668 configuration. (DPFOF ¶ 42.) According to Margaret Knudson, Modern Fence did not "want others to copy [their] design." (DPFOF ¶ 43.)

Modern Fence also represented to the USPTO that it disclosed the '668 configuration by advertising the configuration in the FENCETECH trade show circulars for 2000, 2001, 2002, and 2003. (DPFOF ¶ 37.) While it does not appear that the '668 configuration was ever advertised in the FENCETECH trade show circulars for any of the above-mentioned years, (DPFOF ¶ 38), Modern Fence indicates that it spent money to attend the FENCETECH tradeshow and to display the '668 hinge configuration, (Plaintiff's Counter Statement of Disputed Facts ("PCSDF") ¶ 38).[2]

### '402 and '669 Configurations: Scallop Notch Designs

On November 27, 2007, Trademark Registration 3,342,402 ("'402") was registered based on a trademark application Modern Fence filed on November 15, 2004. (DPFOF ¶ 55.) The '402 mark

> consists of a configuration of a first hinge plate having at least three first scalloped-out areas, a second hinge plate having at least three second scalloped-out areas, one end of a T-member pivotally retained by two first tabs extending from the first hinge plate and the other end of the T-member retained by two second tabs extending from the second hinge plate.

(DPFOF ¶ 56.) The '402 Registration claims at least three scallop notch designs on the perimeter of the hinge plate. (DPFOF ¶¶ 56-58.) The USPTO initially refused registration of the proposed '402 configuration based upon functionality of the mark. (DPFOF ¶ 79.) In response to the USPTO, Modern Fence stated the following: "It appears that the examiner is focusing on the functional portion of the mark and ignoring the non-functional curved notches formed in the exterior of the hinge as

---

[2] There is nothing in the statement of facts setting forth the years that Modern Fence claims to have attended the FENCETECH tradeshow for the purpose of displaying its '668 configuration.

described in solid lines on the drawing page of the trademark application." (DPFOF ¶ 79.) Modern Fence submitted a drawing of the front or pivotal side of the configuration, wherein the notches were drawn in solid lines and the pair of openings as well as the bridge were drawn in dashed lines. (DPFOF ¶ 58.)

A few years after registration was granted to the '402 configuration, on November 20, 2007, Trademark Registration 3,337,669 ("'669") was registered based on a trademark application Modern Fence filed on March 28, 2006. (DPFOF ¶ 59.) The '669 mark

> consists of a configuration of a first hinge plate having at least three first notches formed on a perimeter thereof and a first pair of openings formed through the first hinge plate; and a second hinge plate having at least three second notches formed in a perimeter thereof and a second pair of openings formed through the second hinge plate.

(DPFOF ¶ 60.) Like the design of the '402 configuration, the design of the '669 configuration is marked by the scalloped notches in the perimeter of the hinge. (DPFOF ¶ 61.) However, the '669 Registration claims at least three scallop notch designs on the perimeter of the hinge plate with a pair of openings. (DPFOF ¶¶ 60-61.) In procuring the '669 Registration, Modern Fence submitted the back side of the same hinge configuration as disclosed in the '402 Registration. (DPFOF ¶ 63.) Rather than being depicted in dashed lines as in the '402 mark, however, the pair of openings in the '669 configuration is depicted with solid lines. (DPFOF ¶ 61.)

In support of the distinctiveness of the '669 configuration, Modern Fence declared that it had been using the '669 hinge configuration substantially and exclusively since May 10, 1998. (DPFOF ¶ 68.)[3] Margaret Knudson also declared that Modern Fence disclosed the '669 hinge configuration through advertising in World Fence News nearly every month since June 1998. (DPFOF ¶ 70.) Of

_____

[3] Margaret Knudson testified that she did not know at the time of signing the declaration the meaning of the term "substantially exclusive." (DPFOF ¶ 69.)

the six invoices submitted to demonstrate the advertisement of the '669 configuration, none related to any advertisement of the '669 configuration. (DPFOF ¶ 74.) In fact, Modern Fence admitted that all of the advertisements submitted were inaccurate. (DPFOF ¶ 75.)[4] Further, although Modern Fence declared that it advertised the '669 configuration in the FENCETECH trade show circulars in 2000, 2001, 2002, and 2003, that declaration turned out to be false, except that Modern Fence displayed the '668 hinge configuration at the FENCETECH tradeshow. (DPFOF ¶¶ 71-72; PCSDF ¶ 72.)

Qualipac asserts that it never sold any hinges bearing the scallop notch design used in the '402 and '669 Registrations, and Modern Fence has not submitted evidence demonstrating that Qualipac sold or is selling any hinges with a configuration similar to that disclosed in the '402 and '669 Registrations. (Defendant's Proposed Findings of Fact in Support of Partial Summary Judgment Based on Non-Infringement of the '402 and '669 Trademark Registrations ¶¶ 9-10.)

**Information Pertinent to All Configurations**

Mark Knudson, the President of Modern Fence gave deposition testimony indicating that the pair openings design is a by-product of the placement of the bridge. (DPFOF ¶ 44.) However, in a Declaration filed with the court on November 23, 2009, Mark Knudson indicates that the bridge is the by-product of the pair of openings. (PCSDF ¶ 44.) Moreover, the deposition testimony of Margaret Knudson and Mark Knudson reflect their opinions that the bridge was designed to make the hinge stronger, and that this quality was actively communicated by Modern Fence to its customers. (DPFOF ¶¶ 45, 47-48.) However, Mark Knudson and Margaret Knudson stated in their Declarations that they were both in error concerning the strength of the bridge and that, in fact, the bridge does not add strength to the hinge. (PCSDF ¶¶ 45-46.)

---

[4]    Five of the invoices submitted in procuring the '669 Registration correspond to advertisements depicting hinges with only a single opening as opposed to a pair of openings. (DPFOF ¶ 76.)

7

The USPTO also requested additional information for the applications of both the '668 and '669 marks, including "whether alternative designs are equally efficient and/or competitive" and "any available information concerning designs used by competitors." (DPFOF ¶ 86.)[5] Prior to applying for the '668 and '669 Registrations, Modern Fence compiled a list of company competitors and sent them letters, apprising them of the issuance of the '000 Registration and accusing them of infringement. (PCSDF ¶ 87.) Notwithstanding the issuance of said letters, Modern Fence did not submit to the USPTO information concerning designs used by these other companies. (DPFOF ¶ 87.) In addition, Modern Fence, until it advertised the pair of openings design in a publication in 2003,[6] admitted to treating the design as a functional trade secret instead of a trademark because it wanted to prevent "copycats" from usurping its design. (DPFOF ¶¶ 45, 100.)

### III. STANDARD OF REVIEW

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[5] It is apparent that the defendant mis-numbered proposed finding of fact paragraph 86 as paragraph 85, and thus, the court will refer to such fact with the appropriate designation.

[6] In 2003, only one of Modern Fence's advertisements in World Fence News related to hinges. (DPFOF ¶ 90.)

Case 2:08-cv-00543-WEC   Filed 06/22/10   Page 8 of 25   Document 126

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 630 (7th Cir. 2009). To state it differently, a party will be successful in opposing summary judgment only when they "present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004) (citing *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)). The evidence must create more than "some metaphysical doubt as to the material facts." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

9

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Pending before the court are Qualipac's three motions: (1) Amended Motion for Partial Summary Judgment Based Upon Non-Infringement of the '402 and the '669 Trademark Registrations; (2) Rule 7(h)[7] Expedited Non-Dispositive Motion to Strike Portions of the Declarations of Margaret Knudson and Mark Knudson and Portions of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and Plaintiff's Counter Statement of Disputed Facts in Opposition to Defendant's Motion for Partial Summary Judgment; and (3) Amended Motion for Partial Summary Judgment Based Upon Functionality of the Trademarks and Fraud on the USPTO in the '668 and '669 Registrations. I will discuss each motion in turn.

### A. Motion for Partial Summary Judgment: '402 and '669 Registrations

Qualipac moves the court for partial summary judgment on Counts I-IV with respect to the '402 and '669 Registrations because there is no evidence that it has ever sold any hinges with notches similar to those disclosed in these Registrations. Thus, according to Qualipac, it has not infringed on the '402 and '669 Registrations. Modern Fence "does not challenge Qualipac's representations that it is not the source of the 'scalloped' or 'curved' fence hinge designs." (Pl.'s Resp. at 2.) Accordingly, Qualipac's motion for partial summary judgment based upon non-infringement of the '402 and '669 Registrations will be granted.

---

[7] The Civil Local Rules have been amended such that an Expedited Non-Dispositive Motion is now brought under Rule 7(h), instead of Rule 7.4. The court has altered the caption to reflect this amendment.

**B. Motion to Strike**

Qualipac has filed a motion to strike portions of (1) the Declarations of Margaret Knudson and Mark Knudson; (2) the Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment; and (3) the Plaintiff's Counter Statement of Disputed Facts in Opposition to Defendant's Motion for Partial Summary Judgment. Qualipac moves to strike portions of the Declarations of Margaret and Mark Knudson referring to the functionality of the designs as a violation of the "sham affidavit" rule. Qualipac also moves to strike portions of the plaintiff's response brief in opposition to its motion for partial summary judgment as well as its counter statement of disputed facts to the extent that such documents "refer to and rely upon purported 'expert' testimony and a purported 'expert' report relating to software simulations," because said testimony and report were not disclosed in accordance with the scheduling order and because Qualipac would be prejudiced by a consideration of the same. (Mot. at 2.)

*1. Declarations*

The "sham affidavit" rule prohibits litigants from creating sham issues of fact with affidavits that contradict their prior deposition testimony. *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009). "'If such contradictions were permitted . . . the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'" *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (quoting *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996)). Therefore, when a deposition and an affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because there is a plausible explanation for a lapse of memory.

*Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006) (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001)).

Margaret and Mark Knudson unequivocally testified in their depositions that the bridge strengthened the hinge. Margaret Knudson was asked the following question: "And that bridge strengthened the hinge, correct?" In response, she replied, "[c]orrect." (Kamarei Decl. ¶ 5, Ex. B. at 11.) Furthermore, Mark Knudson was asked whether he "ever t[old] [his] customers about [the] strength of the hinge based on the bridge that goes between the pair of openings," to which he replied "[y]es." After being asked what he specifically told his customers, Mark Knudson answered, "[i]t made them stronger." (Kamarei Decl. ¶ 7, Ex. D at 3.)

In response to Qualipac's motions for partial summary judgment, Margaret and Mark Knudson each submitted a Declaration, dated November 23, 2009. Margaret Knudson declares that she was tricked into saying that the bridge had strength, and that she actually never knew whether the bridge had strength. She also declares that Modern Fence has never claimed that the bridge provided extra strength to the hinge. (Margaret Knudson Decl. ¶¶ 8, 10.) Mark Knudson declared in his Declaration that he was mistaken in his answer about the bridge having any strength, and that Modern Fence has never claimed that the bridge provided extra strength to the hinge. (Mark Knudson Decl. ¶¶ 8-9.)

In my opinion, the Knudsons' Declarations contradict their prior deposition testimony to the extent that the Knudsons now claim that the bridge does not add strength to the hinge. It is clear that they were not elaborating upon, explaining, or clarifying prior testimony. Rather, their Declarations stand in stark contradiction to their deposition testimony, which unequivocally indicated that the bridge adds strength to the hinge and that Modern Fence represented such to its customers. Perhaps the Knudsons were mistaken, but given the time span over which the depositions occurred and the clarity of the questions posed, I am not persuaded that these were honest mistakes that should now be

12

disregarded.  Simply put, insofar as the Declarations of Margaret and Mark Knudson represent that the bridge does not add strength to the hinge, the Declarations are "sham affidavits," submitted to create a sham issue of fact to defeat Qualipac's motion for partial summary judgment.  Therefore, the portions of the Declarations regarding the strength of the bridge will be stricken.

To the extent that Qualipac argues that the Declarations violate the sham affidavit rule with respect to testimony relating to the functionality of the designs, the defendant's motion will be denied.  Modern Fence's admission regarding strength of the bridge cannot be exalted into an admission regarding functionality of the designs, and the court is not willing to go so far as to strike the portions of the Declarations that deny functionality of the designs.  As best as the court can decipher from the submitted deposition transcripts, the Knudsons never *expressly* admitted that the hinge configuration was functional.  In fact, Mark Knudson testified that he "never knew [their] trademark was a function."  (Kamarei Decl. ¶ 7, Ex. D at 7.)  While inferences can be made regarding whether the strength of the bridge makes the bridge functional, the deposition testimony and Declarations are not contradictory with respect to functionality of the design, leaving nothing to strike.

*2.  Web Comparison Report*

Qualipac also moves to strike the portions of the Knudsons' Declarations, the Plaintiff's Opposition, and the Plaintiff's Counter Statement of Disputed Facts that refer to or rely upon the Web Comparison Report, which was submitted as an exhibit to Modern Fence's opposition memorandum.  Qualipac argues that the report was not properly disclosed in accordance with the court's Scheduling Order and that it would be prejudiced by the consideration of such testimony and report.  Modern Fence has not responded to Qualipac's motion to strike.

The November 24, 2008 Scheduling Order set May 15, 2009 as the plaintiff's deadline for disclosing all expert witnesses.  The Scheduling Order also set September 15, 2009 as the discovery

completion deadline. The Web Comparison Report, referred to as an expert report and expert testimony by Qualipac and as a software simulation by Modern Fence, was not disclosed until November 23, 2009. Regardless of what the report is called, it was neither timely completed nor disclosed. Because Modern Fence disclosed the report in an untimely matter, did not move for leave to file the report, and has not responded to Qualipac's motion to strike the above-referenced documents that rely upon the report, and because the consideration of such report would appear to prejudice Qualipac insofar as Qualipac has not had the opportunity to respond to the report, Qualipac's motion will be granted. Accordingly, the portions of the following submissions that refer to or rely upon the Web Comparison Report will be stricken: the Knudsons' Declarations, the Plaintiff's Opposition, and the Plaintiff's Counter Statement of Disputed Facts.

In the end, however, the motion to strike results in a hollow victory for Qualipac for purposes of summary judgment. Such is the case because the hinge design cannot be found to be functional at this juncture of the proceedings, as will be discussed in what follows.

### C. Motion for Partial Summary Judgment: '668 and '669 Registrations

Qualipac argues that Modern Fence's '668 and '669 Registrations should be cancelled because (1) the marks contain functional elements that cannot be protected by trademark law; and (2) Modern Fence perpetuated fraud on the USPTO by concealing information regarding functionality and competitor's designs and by misrepresenting advertisements undertaken in connection with the hinge configurations that were the subject of the trademark applications. In opposition to Qualipac's motion, Modern Fence argues that it never claimed or represented that the pair of openings was functional and that any errors made in prosecuting the various trademark registration applications were honest errors. Therefore, according to Modern Fence, Qualipac has not met the standard for invalidating the '668 and '669 Registrations.

### 1. Functionality

One affirmative defense to an infringement allegation is invalidity based on a mark's functionality. *See* 15 U.S.C. § 1115(b)(8). A functional product feature does not enjoy protection under trademark law. *See* 15 U.S.C. §§ 1052(e)(5) and 1091(c); *see also TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28-29 (2001). This is so because patent law, not trademark law, principally provides "'exclusive rights in useful product features.'" *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273 (Fed. Cir. 2002) (quoting *Elmer v. ICC Fabricating*, 67 F.3d 1571, 1580 (Fed. Cir. 1995)). The Supreme Court, describing the reasoning for this distinction, stated the following:

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage intervention by granting inventors a monopoly over new product designs or functions for a limited time, after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65 (1995) (internal citations omitted). Because registration creates a presumption of validity, the party seeking to invalidate the registered mark has the burden of proof in a challenge to the functionality of the mark. *See Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 339-40 (7th Cir. 1998) ("[R]egistration creates a presumption of validity, implying that the defendant has the laboring oar on all issues relating to validity, including functionality."); *Franek v. Walmart Stores, Inc.*, Nos. 08-CV-0058, 08-CR-1313, 2009 WL 674269, at *10 (N.D. Ill. Mar. 13, 2009) (citing *Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 472 F. Supp. 2d 999, 1011-12 (N.D. Ill. 2007)).

A product is functional and cannot serve as a trademark, "'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *TrafFix*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165). Further, a "functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *Id.* (quoting *Qualitex*, 514 U.S. at 165).

The following factors suggest that a product feature is functional:

(1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the items's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; [and] (5) the effect of the design feature on an item's quality or cost.

*Specialized Seating*, 472 F. Supp. 2d at 1011 (citing *TrafFix*, 532 U.S. at 29; *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 (1982); *Publ'ns Int'l, Inc.*, 164 F.3d at 337, 342; *W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334, 340 (7th Cir. 1985); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1341 (C.C.P.A. 1982)).

Qualipac argues that the pair of openings in the '668 and '669 configurations is functional, and therefore, cannot be protected by trademark law. As evidence, Qualipac points to Modern Fence's application for the '000 Registration, which explicitly states that the "[a]pplicant will submit a new drawing with the nonfunctional features in solid line and the functional features in dashed lines." The application continued to state that the "notches in hinge plate are shown in solid line and the rest of the hinge is shown in dashed line," including the pair of openings. (Kamarei Decl. ¶ 4, Ex. A.) Additionally, accompanying the application for the '402 Registration is a statement that indicates that the "examiner [was] focusing on the functional portion of the mark and ignoring the non-functional curved notches formed in the exterior of the hinge as described in solid lines on the drawing page of the trademark application." (Kamarei Decl. ¶ 9, Ex. F.) Because the pair of openings was shown in

dashed lines in the '000 Registration and the '402 Registration, Qualipac argues that Modern Fence designated the pair of openings as functional.

Because the pair of openings was designated as functional in the '000 and '402 Registrations, Qualipac further argues that the pair of openings remains functional in the '668 and '669 Registrations, and thus, cannot be protected by trademark law. Moreover, Qualipac argues that Modern Fence should be estopped from arguing that such representations in its initial applications to the USPTO were "in-artful." Finally, Qualipac contends that Modern Fence also admitted functionality because it admitted that the bridge strengthens the hinge.

In opposition, Modern Fence asserts that the pair of openings in the '668 and '669 Registrations is nonfunctional. Principally, Modern Fence claims that the drawings were submitted to the USPTO in accordance with the "broken line" procedure specified and required by 37 C.F.R. § 2.52(b)(4), which provides as follows:

> (4) Broken lines to show placement. If necessary to adequately depict the commercial impression of the mark, the applicant may be required to submit a drawing that shows the placement of the mark by surrounding the mark with a proportionately accurate broken-line representation of the particular goods, packaging, or advertising on which the mark appears. The applicant must also use broken lines to show any other matter not claimed as part of the mark. For any drawing using broken lines to indicate placement of the mark, or matter not claimed as part of the mark, the applicant must describe the mark and explain the purpose of the broken lines.

Because it was claiming only the notches in the '000 Registration, Modern Fence contends that the "broken or 'dotted' lines appearing in the drawing thus show placement of the mark in its environment and indicate the matter not claimed as part of the mark *in that application*." (Pl.'s Br. at 6.) Therefore, according to Modern Fence, it was free to claim those other features of its hinge (i.e., the pair of openings) as marks in other registration applications.

Finally, there is the issue regarding the design of the pair of openings and the bridge. To reiterate, Modern Fence admitted that the bridge adds strength to the hinge, that it advertised this

added strength to its customers,[8] and that the pair of openings is a by-product of the bridge placement.[9] Accordingly, Qualipac argues that the pair of openings is functional because the pair of openings design and the bridge design are one and the same. On the other hand, Modern Fence argues that '668 and '669 Registrations solely claim the pair of openings, rather than the bridge, and therefore, even if the bridge adds strength to the hinge, it does not make the pair of openings functional.

After reviewing the evidence, the court cannot conclude as a matter of law that the pair of openings claimed as the subject of the mark in the '668 and '669 Registrations is functional. First, although Modern Fence's statement to the USPTO accompanying the application for the '000 configuration seems to indicate that all features portrayed in the dashed lines, including the pair of openings, were functional features of the hinge, such representation was made during a different trademark application. In addition, Modern Fence claims that it was merely following the "broken line" procedure set forth by regulation in applying for the earlier trademark. Certainly, Modern Fence cannot have it both ways. But, which statement more accurately depicts the functionality of the pair of openings is not for the court to decide with finality at this stage—it is the province of the trier of fact to weigh the evidence and to determine the truth of that issue.

Second, in my opinion, it does not necessarily follow that the pair of openings is functional because the bridge adds strength to the hinge and because the pair of openings is the by-product of the placement of the bridge. To me, it appears that there is a dispute of material fact about whether the pair of openings and the bridge comprise one design feature or whether the bridge and pair of openings

---

[8] Although Modern Fence did not admit that the bridge was functional, it can be inferred that the additional strength that the bridge provides to the hinge makes the bridge functional because it affects the quality of the product.

[9] To the extent that Mark Knudson's Declaration also indicates that the bridge is the by-product of the two openings, it will be stricken as a violation of the sham affidavit rule because it expressly contradicts his previous testimony.

18

are separate and distinct features of the hinge, necessitating a weighing of the evidence by the fact finder. There is simply insufficient evidence from which to conclude as an undisputed fact that the pair of openings is functional because the bridge is functional.

Construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, I cannot say that the pair of openings design is functional. In most instances, functionality is an issue of fact. *See Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1123 (7th Cir. 1988) (stating that the functionality finding is not to be reversed unless found to be "clearly erroneous"). Only in "appropriate cases" may the functionality of a trademark be "'subject to resolution on a summary judgment motion.'" *Franek*, Nos. 08-CV-0058, 08-CR-1313, 2009 WL 674269, at *9 (N.D. Ill. Mar. 13, 2009) (quoting *Global Manufacture Group, LLC v. Gadget Universe.com*, 417 F. Supp. 2d 1161, 1167 (S.D. Ca. 2006)); *see also Invisible Fence, Inc. v. Perimter Techs., Inc.*, 2007 WL 273129, at *8 (N.D. Ind. Jan. 26, 2007). In *Franek* and *Invisible Fence, Inc.*, cases in which issues of functionality were resolved on summary judgment, there existed utility patents that claimed features purporting to be non-functional. According to the Supreme Court in *TrafFix*, "[a] utility patent is strong evidence that the features therein claimed are functional." 532 U.S. at 29. Per this instruction, the burden switches to the holder of the mark to demonstrate non-functionality of the claimed feature. *See Franek*, 2009 WL 674269, at *18.

This case is not one of those appropriate cases where resolution of a functionality issue can be resolved at summary judgment stage. I know of no utility patent claiming the pair of openings. Thus, the '668 and '669 Registrations create a presumption of validity. Because I find that material issues of fact exist regarding the functionality of the pair of openings design, Qualipac's motion for partial summary judgment based upon functionality of the marks will be denied.

## 2. Fraud on the USPTO

Fraud in the procurement of a trademark registration may be raised as an affirmative defense to a charge of infringement of a registered mark. 15 U.S.C. § 1115(b)(1). A party may also petition to cancel a registered trademark on the ground that the trademark was obtained fraudulently. 15 U.S.C. § 1064(3). Fraud in procuring a trademark registration "occurs when an applicant knowingly makes false, material representations of fact in connection with its application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)). A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. *Id.* Indeed, "fraud must be shown by clear and convincing evidence in order to provide a basis for either cancellation or damages," and it is "deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark." *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982); *see also In re Bose Corp.*, 580 F.3d at 1243-46 (requiring proof of intent to deceive before cancelling a trademark registration). Further, deceptive intent can be inferred from indirect and circumstantial evidence. *In re Bose Corp.*, 580 F.3d at 1245.

The fraud alleged by Qualipac involves Modern Fence's alleged misrepresentation to the USPTO regarding the functionality of the pair of openings, its failure to disclose to the USPTO alternative designs used by competitors, and finally, its alleged misrepresentation regarding advertisements concerning the pair of openings design.

### *Functionality*

Qualipac argues that Modern Fence concealed from the USPTO information regarding functionality of the registered trademarks. Specifically, Qualipac makes three arguments. First, Qualipac argues that Modern Fence strategically claimed a pair of openings in the hinge rather than the bridge, thereby submitting drawings of only the back side of the hinge to "deflect the examiner's

attention" from the bridge. Second, Qualipac contends that Modern Fence intentionally failed to disclose information regarding the '000 and '402 Registrations after the USPTO asked for a written statement about any promotional and/or explanatory materials concerning the configuration, particularly any materials specifically related to the design features embodied in the proposed mark. Finally, Qualipac argues that Modern Fence did not provide information regarding alternative designs upon the USPTO's request for such information.

First and foremost, because material questions of fact exist regarding the functionality of the pair of openings design, judgment as a matter of law with respect to Modern Fence's allegedly having committed fraud on the USPTO by concealing the functionality of the pair of openings is not appropriate.

Nevertheless, Qualipac's arguments in support of its position that Modern Fence committed fraud by concealing functionality still do not demonstrate that Qualipac is entitled to judgment as a matter of law. There is simply not sufficiently clear and convincing evidence from which to infer that Modern Fence submitted drawings of the back side of the hinge and did not provide information regarding the '000 and '402 Registrations with an intent to deceive the USPTO.

Finally, with respect to alternative designs, the Supreme Court in *TrafFix* questioned the utility of examining such alternative designs, finding that once a feature is deemed functional under the traditional rule, "[t]here is no need . . . to engage . . . in speculation about other design possibilities . . . which might serve the same purpose." 532 U.S. at 33. In the wake of *TrafFix*, debate has arisen over the proper role of alternative designs when analyzing a feature's functionality. That having been said, if functionality is not established under the traditional rule, as in this case, *TrafFix* does not appear to hold that evidence about alternative designs is always irrelevant.

It need not be the task of this court to resolve any questions left open by the Court in *TrafFix*, however, because Qualipac has not conclusively established that Modern Fence committed fraud against the USPTO by failing to submit alternative designs. Initially, the USPTO requested that Modern Fence provide information concerning alternative designs. Specifically, the USPTO requested the following information:

> A written explanation and any relevant evidence as to whether alternative designs are available for the feature(s) embodied in the proposed mark, as well as whether [the] alternative designs are equally efficient and/or competitive. Applicant must also include a written explanation and any available information concerning de[s]igns used by competitors.

(DPFOF ¶ 86.) It is undisputed that after this request was made, Modern Fence did not provide the USPTO with a statement concerning alternative designs. According to Qualipac, Modern Fence compiled a list of competitors and sent cease and desist letters to them in 2005, thereby evidencing its knowledge of designs used by competitors as well as its deliberate intent to conceal this knowledge. (DPFOF ¶ 87.)

Modern Fence admits to sending accusatory letters to other companies, although it maintains that the impetus for such letters was infringement of the '000 Registration. (PCSDF ¶ 87.) This detail is important because if, as Modern Fence maintains, such accusatory letters strictly involved the '000 Registration, which claimed the "v" notches around the perimeter of the hinge, the letters do not conclusively establish Modern Fence's awareness of competitors' designs *with respect to the pair of openings*.

Because the court cannot discern the extent of Modern Fence's knowledge regarding competitors' pair of openings designs, it is not clear that Modern Fence intended to mislead the USPTO in its application for federal registration. In other words, because there is no clear and convincing evidence that Modern Fence acted fraudulently in not disclosing competitors' designs to

22

the USPTO, judgment as a matter of law cannot be granted in favor of Qualipac. Indeed, there is an issue of fact regarding whether Modern Fence withheld information concerning competitors' designs from the USPTO and if so, whether it deliberately withheld the information.

_Advertisements and Secondary Meaning_

A mark that would otherwise be denied registration can be registered if it has become distinctive of the applicant's goods in commerce by acquiring secondary meaning. 15 U.S.C. § 1052(f). Proof of substantially exclusive and continuous use of a mark for the five years before the date on which the claim of distinctiveness is made may constitute prima facie evidence that a mark has become distinctive. *See id.*

Modern Fence declared to the USPTO that it had disclosed the '668 and '669 configurations in World Fence News nearly every month since June 1998. It also declared that it advertised both configurations in the FENCETECH trade show circulars in 2000, 2001, and 2003. In fact, though, both statements were false, and the invoice submitted as proof of such advertisements did not reflect advertising done consistent with what was represented to the USPTO. Moreover, Modern Fence admitted that it did not advertise the pair of openings in any publication for several years because it intended to conceal the design to prevent "copycats" from usurping its design. (DPFOF ¶ 99.)

Despite the belief that Qualipac's strongest argument that Modern Fence committed fraud on the USPTO lies in the false statements and invoices regarding advertising, whether Modern Fence acted with the intent to deceive the USPTO remains an issue of fact. There is "'a material legal distinction between a false representation and a fraudulent one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.'" *In re Bose Corp.*, 580 F.3d at 1243 (quoting *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 USPQ 327-329 (T.T.A.B. 1976)). Here, Modern Fence submitted a

Case 2:08-cv-00543-WEC   Filed 06/22/10   Page 23 of 25   Document 126

declaration wherein it claimed when and in which trade magazines it advertised its hinge configuration and attached thereto invoices that allegedly confirmed such advertising. Although Modern Fence has not challenged the falsity of its representations to the USPTO regarding advertising, it has also not presented any evidence explaining the falsity of these representations. To be sure, Modern Fence's mark was initially rejected on the basis of nondistinctiveness. Thus, it would appear questionable whether such misrepresentations in the declaration were the result of a misunderstanding, inadvertence, a mere negligent omission, or the like. However, the ultimate determination of Modern Fence's intent rests upon a credibility finding, which is precisely a finding that cannot properly be made at the summary judgment stage. Instead, the issue of intent requires fact finding by a trier of fact.

Moreover, one other important inquiry is whether the misrepresentations were material. A misrepresentation is "material" if, but for the misrepresentation, the federal registration either would not or should not have issued. *See Nat'l Trailways Bus Sys. v. Trailway Van Lines, Inc.*, 269 F. Supp. 352, 356 (E.D.N.Y. 1965) (false representation held material where registration "would not have been granted . . . if the true facts were disclosed"). Although Modern Fence does not seem to dispute the falsity of the representations made to the USPTO with respect to its advertising, Modern Fence states that one of the invoices initially submitted to the USPTO demonstrated that money was spent to attend the FENCETECH tradeshow to display the '668 hinge. Moreover, Modern Fence claims that the products themselves have been marketed and sold substantially and continuously since at least as early as 1998 for the '669 Registration and 2000 for the '668 Registration, and this claim has not been disputed. Therefore, it is not clear to me that, but for the misrepresentation regarding advertising, the federal registrations would not or should not have issued. Accordingly, whether such

misrepresentations were material is a factual question, making partial summary judgment on the issue of fraud inappropriate.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for partial summary judgment based upon non-infringement of the '402 and the '669 Trademark Registrations (dkt # 105) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the defendant's motion for partial summary judgment based upon functionality of the marks and fraud on the PTO in the '668 and '669 Registrations (dkt # 110) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion to strike (dkt # 124) be and hereby is **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that on July 15, 2010 at 9:45 a.m. in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, the court will conduct a conference with the parties to discuss the further processing of this case to final resolution and judgment.

**SO ORDERED** this 22nd day of June 2010 at Milwaukee, Wisconsin.

**BY THE COURT**:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge