MODERN FENCE TECHNOLOGIES, INC.,

      Plaintiff,

      v.                                             Case No. 08-C-0543

QUALIPAC HOME IMPROVEMENT CORP.,

      Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR
ATTORNEYS' FEES AND SANCTIONS**

## I. BACKGROUND

From April 18, 2011 through April 27, 2011, a jury trial was conducted in this trademark

infringement and attempted monopolization action. The factual determinations rendered by the jury

in its verdict provided the basis for the entry of a judgment in favor of defendant Qualipac Home

Improvement Corp. ("Qualipac") with respect to some claims and in favor of plaintiff Modern Fence

Technologies, Inc. ("Modern Fence") with respect to other claims.

More precisely, the jury found that, with respect to the fence hinge design depicted in Modern

Fence's '000 Registration, Modern Fence did prove that the design depicted therein was not

functional. However, according to the jury, Modern Fence failed to prove (1) that the design had

acquired distinctiveness and (2) that the design was not generic. In other words, the jury found that

the fence hinge design depicted in Registration '000 was not subject to being trademarked.

That said, the jury also found, in connection with Registration '000, that Qualipac did not

prove that Modern Fence intentionally submitted false information to the United States Patent and

Trademark Office to obtain the '000 Registration. Moreover, the jury found that Qualipac did not

prove that Modern Fence attempted to monopolize the market for fence hinges with the "v" notch design depicted in the '000 Registration.

Turning to the '668 Registration, just as it did with respect to the design depicted in the '000 Registration, the jury found that Modern Fence did prove that the design depicted in the '668 Registration was not functional. Moreover, just as it did with respect to the hinge design depicted in the '000 Registration, the jury found that Modern Fence did not prove, with respect to the '668 Registration, (1) that the design had acquired distinctiveness and (2) that the design was not generic. Interestingly, however, unlike what it found with respect to the '000 Registration, the jury found that Qualipac did prove that Modern Fence intentionally submitted false information to the United States Patent and Trademark Office to obtain the '668 Registration. The net result of the foregoing findings led to the same legal conclusion that resulted from the jury's findings with respect to the '000 Registration – the fence hinge design depicted in the '668 Registration was not subject to being trademarked.

Finally, just as it did with respect to the '000 Registration, the jury found that Qualipac did not prove that Modern Fence attempted to monopolize the market for fence hinges with the "v" notch design depicted in the '668 Registration.

Well in advance of the trial, Qualipac filed motions for summary judgment seeking dismissal of all of the plaintiff's Lanham Act claims. Modern Fence did not oppose Qualipac's motion for partial summary judgment on any claimed infringement by Qualipac of the scallop-notch fence hinge design depicted in Registrations '402 and '669. Thus, Modern Fence's claims against Qualipac for infringement of such registrations, as had been alleged in its complaint, were dismissed prior to trial. However, the court denied Qualipac's motion for summary judgment seeking dismissal of the claims for infringement of the "v"-notch hinge design depicted in the '000 and '668 Registrations, ruling that there were material issues of fact with respect to the claimed infringement of such registrations.

Despite being successful on its motion for partial summary judgment with respect to the Lanham Act claims regarding infringement of the '402 and '669 Registrations, Qualipac nevertheless chose to litigate at trial Modern Fence's right to trademark the fence hinge designs depicted in the '402 and '669 Registrations. The jury found against Qualipac on its challenges to the validity of those two registrations.

Specifically, the jury found that Modern Fence proved (1) that the fence hinge designs depicted in the '402 and '669 Registrations had acquired distinctiveness; (2) that such designs were not generic; and (3) that such designs were not functional. Furthermore, the jury found that Qualipac failed to prove that Modern Fence had intentionally submitted false information to the United States Patent and Trademark Office to obtain those two registrations.

On May 11, 2011, judgment was entered on the verdict. That judgment reads as follows:

> **NOW THEREFORE**, based on the jury's factual determinations as set forth in its verdict,
>
> **IT IS HEREBY ORDERED** that plaintiff Modern Fence Technologies, Inc. ("Modern Fence") take nothing from defendant Qualipac Home Improvement Corp. ("Qualipac") on its claims against Qualipac for infringement of United States Trademark Registration Nos. 2,917,000 and 3,337,668;
>
> **IT IS FURTHER ORDERED** that United States Trademark Registration No. 2,917,000, which had been previously issued to Modern Fence by the United States Patent and Trademark Office on January 11, 2005, be and hereby is **CANCELLED**, pursuant to 15 U.S.C. § 1119, due to lack of acquired distinctiveness and due to genericness;
>
> **IT IS FURTHER ORDERED** that United States Trademark Registration No. 3,337,668, which had been previously issued to Modern Fence by the United States Patent and Trademark Office on November 20, 2007, be and hereby is **CANCELLED**, pursuant to 15 U.S.C. § 1119, due to lack of acquired distinctiveness, due to genericness, and due to the intentional submission of false information to the United States Patent and Trademark Office in obtaining such registration;
>
> **IT IS FURTHER ORDERED** that Qualipac's prayer that United States Trademark Registration Nos. 3,342,402 (issued on November 27, 2007) and 3,337,669 (issued on November 20, 2007) be cancelled pursuant to 15 U.S.C. § 1119, be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Qualipac take nothing from Modern Fence on Qualipac's counterclaim against Modern Fence for attempted monopolization;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly;

**IT IS FURTHER ORDERED** that the Clerk of Court shall certify this order and the judgment emanating therefrom and send the same to the Director of the United States Patent and Trademark Office.

The net result of the foregoing is, to repeat, that neither party was entirely successful on their claims at trial and neither party was entirely unsuccessful on their claims at trial. Both were winners and both were losers.

On May 11, 2011, Qualipac filed a motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) and for sanctions pursuant to 28 U.S.C. § 1927 and Fed. R. Civ. P. 11. On June 1, 2011, Modern Fence filed its brief in opposition to the motion. On June 15, 2011, Qualipac filed its reply. Thus, Qualipac's motion is fully briefed and is ready for resolution. For the reasons that follow, Qualipac's motion will be granted in part and denied in part.

## II. DISCUSSION

Generally speaking, the "American" rule in litigation forbids shifting the litigation expenses of the prevailing party to the losing party. There are exceptions to that rule. The Lanham Act provides such an exception. Indeed, employing that very word, Section 35 of the Lanham Act provides that "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added).

In *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958 (7th Cir. 2010), the court, citing the interest of clarity, simplicity, and uniformity, answered the question of

"why the Lanham Act makes an exception, albeit a narrow one (if 'exceptional' is to be given proper

force), to the 'American' rule that forbids shifting the litigation expenses of the prevailing party to

the loser." 626 F.3d at 962. The court stated as follows:

> The reason has been said to be that "the public interest in the integrity of marks as a measure of quality of products" is so great that it would be "unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful," and the award of fees "would make a trademark owner's remedy complete in enforcing his mark against willful infringers, and would give defendants a remedy against unfounded suits." In addition, the patent and copyright statutes authorize the award of attorneys' fees, and trademark law protects an analogous form of intellectual property.

626 F.3d at 962 (internal citations omitted).

The court then proceeded to discuss precisely what makes a case "exceptional" thereby

making an award of attorneys' fees to the prevailing party appropriate. According to the court, a case

is "exceptional" if the losing party engaged in conduct amounting to "abuse of process."

> When the plaintiff is the oppressor, the concept of abuse of process provides a helpful characterization of his conduct. Unlike a malicious prosecution, which involves filing a baseless suit to harass or intimidate an antagonist, abuse of process is the use of the litigation process for an improper purpose, whether or not the claim is colorable. "The gist of the abuse of process tort is said to be misuse of legal process primarily to accomplish a purpose for which it was not designed, usually to compel the victim to yield on some matter not involved in the suit . . . . If the plaintiff can show instigation of a suit for an improper purpose without probable cause and with a termination favorable to the now plaintiff, she has a malicious prosecution or a wrongful litigation claim, not a claim for abuse of process . . . . [T]he abuse of process claim permits the plaintiff to recover without showing the traditional want of probable cause for the original suit and without showing termination of that suit." Abuse of process is a prime example of litigating in bad faith.

> The term "abuse of process" is not used to describe behavior by defendants. It has been said that "while it is obvious that the torts of abuse of process and malicious prosecution are prevalent and damaging to both innocent defendants as well as the judicial process, it is not so obvious where the line is that separates an attorney's zealous advocacy from his tortious interference with the litigation process." But the need to draw that line is the same whether the plaintiff is attacking or the defendant is defending. If a defendant's trademark infringement or false advertising is blatant, his insistence on mounting a costly defense is the same misconduct as a

plaintiff's bringing a case (frivolous or not) not in order to obtain a favorable judgment but instead to burden the defendant with costs likely to drive it out of the market. Predatory initiation of suit is mirrored in predatory resistence to valid claims.

626 F.3d at 963 (internal citations omitted).

The court then concluded by holding that

a case under the Lanham Act is "exceptional," in the sense of warranting an award of reasonable attorneys' fees to the winning party, if the losing party was the plaintiff and was guilty of abuse of process in suing, or if the losing party was the defendant and had no defense yet persisted in the trademark infringement or false advertising for which he was being sued, in order to impose costs on his opponent.

626 F.3d at 963-64.

The court in *Nightingale* also gave trial courts some guidance in assessing whether the losing party did indeed engage in abuse of process.

A procedural issue remains to be considered. Abuse of process is the name of a tort. A tort is proved in a tort suit. But a proceeding for an award of attorneys' fee is not a suit; it is a tail dangling from a suit. We don't want the tail to wag the dog, and this means that an elaborate inquiry into the state of mind of the party from whom reimbursement of attorneys' fees is sought should be avoided. It should be enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable – was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent – in other words only because it was extortionate in character if not necessarily in provable intention. That should be enough to make a case "exceptional."

626 F.3d at 965.

With all this in mind, the court will now turn to consideration of the defendant's motion for attorneys' fees under the Lanham Act. The first issue to be addressed, of course, is whether the party here seeking an award of attorneys' fees, Qualipac, is indeed a prevailing party.

To be sure, Qualipac was successful in its defense of Modern Fence's claims that Qualipac infringed Registrations '402 and '669. Those claims were dismissed at the summary judgment stage.

In fact, Modern Fence did not oppose summary judgment on those claims. Thus, Qualipac was a prevailing party on those infringement claims.

However, Qualipac chose to litigate other issues relating to those two registrations and sought from the jury certain factual findings that would presumably have led to the cancellation of those two registrations as well. Qualipac failed in its effort to do so. Thus, Qualipac was not a prevailing party on those issues. To the contrary, at least based on the jury's factual determinations in this case, those registrations are still viable, i.e., they have not been cancelled.

Furthermore, with respect to Modern Fence's claims for infringement of Registrations '000 and '668, it is a bit of a mixed bag. To be sure, the jury rendered factual determinations that led this court to cancel Registrations '000 and '668. However, with respect to Registration '000, the jury rejected Qualipac's argument that Modern Fence intentionally submitted false information to the United States Patent and Trademark Office to obtain the '000 Registration.

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), the Supreme Court held that a suit's role as a catalyst in inducing the opposing party to change its policies does not support an award of attorneys' fees; rather, a party "prevails" only by obtaining a judicial order altering its status *vis-a-vis* its adversary. *See National Rifle Association of America, inc. City of Chicago, Illinois and Village of Oak Park, Illinois*, Nos. 10-3957, 10-3965, 11-1016, 2011 WL 2150785, at *1 (7th Cir. June 2, 2011).

In this case, the court ordered that judgment be entered cancelling Registrations '000 and '668. This means that Qualipac can now compete with Modern Fence for the sale of "v"notch fence hinges without fear of being accused of infringing those registrations. This certainly constitutes obtaining a judicial order altering Qualipac's status *vis-a-vis* Modern Fence.

To be sure, Qualipac did not succeed in persuading the jury to make factual findings that could have led to the court's ordering the cancellation of Registrations '402 and '669. But, there was no evidence that Qualipac ever sold fence hinges that arguably infringed those registrations anyway. So not obtaining an order cancelling those registrations had no effect whatsoever on the competitive status between Modern Fence and Qualipac.

Given the foregoing, Qualipac, in my opinion, is a prevailing party, at least on the Lanham Act claims that were litigated in this action. This is because the court's decision granting summary judgment to Qualipac on the '402 and '669 infringement claims, together with the court's order cancelling the '000 and '668 Registrations, materially altered Qualipac's competitive status *vis-a-vis* Modern Fence in the fence hinge market.

Of course, that does not necessarily mean that Qualipac is entitled to attorneys' fees under the Lanham Act. In order to be entitled to attorneys' fees, Qualipac must also demonstrate that this is an "exceptional" case, as that term is discussed above. That is to say, Qualipac must show that Modern Fence engaged in conduct tantamount to the abuse of process, i.e., that Modern Fence "use[d] [] the litigation process for an improper purpose." *Nightingale*, 626 F.3d at 963. In my opinion, Qualipac has not made such a showing.

In its submissions, Qualipac regales against Modern Fence for bringing a lawsuit that it claims Modern Fence knew, or should have known, was meritless. Qualipac uses the jury's findings to say, in essence, "See, we told you so." But Qualipac's ultimate success in defending against Modern Fence's claims does not in and of itself provide a basis for attorneys' fees under the Lanham Act. Were that the case, any prevailing party in a Lanham Act case would be entitled to attorneys' fees. After all, hindsight is always 20/20.

The closest Qualipac comes to showing that Modern Fence used the litigation process "for an improper purpose" is found in its reply brief. There it references the testimony of Modern Fence representatives Mark and Margaret Knudson, during which testimony, according to Qualipac, they "stated that [Modern Fence] only sued entities that were 'undercutting' its own prices, and that it chose not to sue another competitor, Quality Fence, because despite the incredible similarity between the hinges, Quality Fence's prices were only slightly lower than Modern Fence's." (Def.'s Reply 6-7.)

But this does not *ipso facto* demonstrate use of the litigation process for an improper purpose. To the contrary, such decision on the part of Modern Fence could just as easily be argued to show a judicious use of the litigation process - suing for trademark infringement only those defendants whom the plaintiff believes are actually harming it.

To be sure, Modern Fence did not oppose Qualipac's motion for partial summary judgment on the '402 and '669 infringement claims. But it was not until the jury rendered its factual findings that the plaintiff's claims concerning infringement of the '000 and '668 Registrations were ultimately resolved in favor of the defendant. That there were sufficient factual issues present to take these claims to trial in and of itself, at least in my opinion, demonstrates that Modern Fence was not litigating this case for any improper purpose. After all, when someone owns a trademark, he is entitled to pursue an infringement claim against those whom he believes is infringing on that mark. And that is what Modern Fence did.

Furthermore, as if to provide at least some fodder for a finding that Modern Fence did not litigate this case for an improper purpose, the jury directly found (1) that Modern Fence did not attempt to monopolize the market for fence hinges with the "v" notch design depicted in the '000 Registration; (2) that Modern Fence did not attempt to monopolize the market for fence hinges with

the "v" notch and pair of openings design depicted in the '668 Registration; (3) that Modern Fence

did not attempt to monopolize the market for fence hinges with the scallop notch design depicted in

the '402 Registration; and (4) that Modern Fence did not attempt to monopolize the market for fence

hinges with the scallop notch and pair of openings design depicted in the '669 Registration.  In other

words, the jury found that Modern Fence did not attempt to monopolize the relevant market by the

improper use of any of the four registrations.

This was a hard-fought case; and no doubt an expensive one for both sides to litigate.  But

nothing that the defendant has presented persuades me that this case is an "exceptional" one that

warrants an award of attorneys' fees under the Lanham Act.  Thus, the defendant's motion to award

attorneys' fees under the Lanham Act will be denied.

Qualipac also seeks an award of attorneys' fees under 28 U.S.C. § 1927 and Fed. R. Civ. P.

11.  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct."  In turn, Fed. R. Civ. P.

11 provides, in part:

> (b) Representations to the Court.  By presenting to the court a pleading, written
> motion, or other paper – whether by signing, filing, submitting, or later advocating
> it – an attorney or unrepresented party certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry reasonable under the
> circumstances:
>
> (1)  it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or
> by a nonfrivolous argument for extending, modifying, or reversing existing law or for
> establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 further sets forth the sanctions that may be imposed. The rule also provides, however, that "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

In *The Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717 (7th Cir. 2006), the Seventh Circuit explained that

> a court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice, . . . ; pursued a claim that is "without a plausible legal of factual basis and lacking in justification," . . . ; or "pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound[.]" We have also interpreted § 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable."

435 F.3d at 720 (internal citations omitted).

Qualipac argues that it should be awarded all of its attorneys' fees, i.e., over $400,000.00. This is because, "[a]s the jury found, Qualipac did nothing wrong. Modern Fence, on the other hand, attempted to pursue infringement claims against Qualipac based upon Registrations which were (as found by the jury) invalid." (Def.'s Br. 17.)

It is correct to say that Qualipac was ultimately successful in defending itself against Modern Fence's infringement claims. Two of them were dismissed at the summary judgment stage, and the other two at the conclusion of the trial. That a party is ultimately successful in defending itself against all claims, however, does not mean that it is automatically entitled to be awarded its attorneys' fees. If that were the case, the "American" rule, which does not generally allow for fee-shifting, would be eviscerated. It is only if certain steps are taken by a party's counsel that fall within

11

the scope of § 1927, or by a party or the party's counsel that fall with the scope of Rule 11 (at least for purposes of discussion in this case) that reasonable attorneys' fees can be awarded.

I am not persuaded that counsel for Modern Fence engaged in any all-encompassing and continual conduct during the course of the litigation that could be construed as falling within the penalty box of § 1927. I do believe, however, that counsel for Modern Fence should have readily dismissed Modern Fence's claims against Qualipac for infringement of the '402 and '669 Registrations once it became clear that Qualipac did not manufacture or sell fence hinges with the scallop design, as depicted in those two registrations. But that was not done. Instead, counsel sat back and let Qualipac file a motion for partial summary judgment, in which Qualipac presented that it had not infringed on such registrations, and then did not oppose that motion.

Along with its motion for sanctions, Qualipac filed a declaration of Attorney Kamarei. In his declaration, Attorney Kamarei avers the following:

> 4. Two of the Registrations, '402 and '669, feature scallop notches and protect front and back of the same hinge. Despite filing infringement claims against Qualipac relating to these Registrations, Modern Fence Technologies, Inc. ("Modern Fence") had no evidence that Qualipac had ever sold any hinges that were even remotely similar to those depicted in the '402 and '669 Registrations.
>
> 5. On several occasions prior to filing its Motion for Partial Summary Judgment Based on Non-Infringement of the '402 and '669 Registrations, Qualipac notified Modern Fence of this fact and requested that Modern Fence withdraw such claims. A true and correct copy of a letter dated September 18, 2009 from my office to counsel for Modern Fence is attached hereto as Exhibit A and incorporated by reference herein. A true and correct copy of a letter dated October 22, 2009 from my office to counsel for Modern Fence is attached hereto as Exhibit B and incorporated by reference herein.
>
> 6. However, Modern Fence refused to withdraw its causes of action for infringement of those two Registrations.
>
> 7. Only after Qualipac went through the extensive time, effort, and expense of filing its Motion for Partial Summary Judgment on these claims based on non-infringement did Modern Fence offer to dismiss the claims regarding scallop notches. However,

this offer was contingent upon Qualipac also dismissing its counterclaims based upon such Registrations.

8. At that point, given that Qualipac had already expended much time and effort, Qualipac elected to allow the Court to decide the Motion for Partial Summary Judgment.

(Kamarei Decl. ¶¶ 4-8; internal citations omitted.)

Indeed, Mr. Kamarei's letter to counsel for Modern Fence dated September 18, 2009, reads

as follows:

Dear Mr. Mann, Mr. Ersler:

Enclosed please find a copy of Defendants Motion for Sanctions Under Federal Rule of Civil Procedure 11 and Memorandum of Law.

As you know, Qualipac has always taken the position that it has *not* sold any products bearing the design of a "scallop" or "curved" design. After taking the deposition of Plaintiff, including Margaret Knudson, it has become readily apparent that Plaintiff *never had any evidence* that Qualipac sold, advertised, or produced any hinges having a "scallop" design as is shown in Plaintiff's trademark registrations 3,342,402 and 3,337,669. The service of this letter puts you, your firm and Plaintiff on notice of all the reasons why the filing and continuation of assertion of infringement of trademark registrations 3,342,402 and 3,337,669 claim against Defendant is a violation of Rule 11.

We hereby demand that Plaintiff immediately dismiss claims of the Complaint relating to registrations 3,342,402 and 3,337,669 against Qualipac with prejudice. If Modern Fence is unwilling to do so, we believe that you are obligated, as an officer of the Court, to file a motion to withdraw as counsel for Plaintiff in this proceeding. If you fail to do so, we will be pursuing sanctions against you and your firm for violation of Rule 11, including but not limited to, the attorneys' fees and litigation costs incurred by Defendant in defending these base-less claims.

*Please note that since our motion for summary judgment is due shortly[1] and we will be working on those motions immediately, time is of the essence that you act immediately.*

If you have any questions in this regard, please do not hesitate to contact me.

---

[1] Indeed, under this court's scheduling order of November 24, 2008, all dispositive motions were to be filed no later than September 28, 2009.

(Ltr. Dkt No. 178, Ex. A.)

A similar letter was sent to plaintiff's counsel on October 22, 2009, when the defendant re-filed its motion for partial summary judgment. This re-filing, which took place on October 23, 2009, was necessitated because the defendant had initially filed its entire brief under seal on September 28, 2009. The court thereafter ordered the defendant to re-file its brief publically.

Counsel for the plaintiff has not disputed at least some of the foregoing assertions by Attorney Kamarei. Thus, the court is left to conclude that, at least no later than September 18, 2009, counsel for the plaintiff knew that Qualipac had not infringed Registrations '402 and '669. In explanation for why the plaintiff did not voluntarily dismiss those two infringement claims, counsel for the plaintiff asserts:

> More than one year after this action was filed, Qualipac, for the very first time, brought to Modern Fence's attention its claim that it never sold the "scalloped" form of fence hinge covered by Modern Fence's '402 and '669 registrations. That happened in an email and letter sent to Modern Fence's counsel on September 18, 2009. That email and letter included a baseless "safe harbor" Rule 11 motion. However, less than 12 days later, *and far less than the 21 days expressly provided by Rule 11*, Qualipac filed a motion for summary judgment denying infringement of the '402 and '669 registrations directed to the "scalloped" hinge design. In response to that motion, Modern Fence accepted Qualipac's representation that it did not sell "scalloped" hinges and did not oppose summary judgment as to non-infringement of the scalloped hinge registrations. As there was no dispute regarding non-infringement of the '402 and '669 registrations, this court granted summary judgment of non-infringement as to these registrations.

(Pl.'s Br. 10-11; internal citations omitted.)

Plaintiff's counsel may be correct in asserting that he should have been granted 21 days to withdraw the '402 and '669 infringement claims before being subjected to Rule 11 sanctions. But, 28 U.S.C. § 1927 does not have such 21-day requirement. It is clear to me that plaintiff's counsel was well aware, certainly no later than September 18, 2009, when he received Mr. Kamarei's letter (and likely even earlier when depositions of the Knudson's were being conducted), that Qualipac had

not infringed the '402 and '669 Registrations. He should have dismissed the '402 and '669 infringement claims at that point, without waiting for a request to do so from defendant's counsel. Moreover, he should not have attempted to condition the dismissal of those claims on the defendant's agreement to dismiss its counterclaims. One had nothing to do with the other. *See The Jolly Group*, 435 F.3d at 720 ("We have also interpreted § 1927 'to impose a continuing duty upon attorneys to dismiss claims that are no longer viable.'").

Thus, the court will order plaintiff's counsel to pay to the defendant the reasonable attorneys' fees incurred by the defendant in preparing and filing its motion for partial summary judgment seeking dismissal of the '402 and '669 Registration infringement claims.

Turning to the defendant's motion for Rule 11 sanctions, I am not persuaded that such sanctions are appropriate. As plaintiff's counsel points out, the only time that the defendant gave notice to plaintiff's counsel of the possibility of seeking Rule 11 sanctions was on September 18, 2009. But, that notice was followed in short order (i.e., less than 21 days later) with a motion for partial summary judgment seeking dismissal of the '402 and '669 Registration infringement claims. By not giving the plaintiff sufficient time under the safe harbor notice provided for in Rule 11(c)(2) before filing the motion for partial summary judgment, the defendant may have forfeited its right to seek Rule 11 sanctions for the plaintiff's not voluntarily dismissing the '402 and '669 Registration infringement claims. But it is not necessary for me to decide such question because, as set forth above, the court is awarding to the defendant, pursuant to 28 U.S.C. §1927, attorneys' fees that were reasonably incurred in connection with the defendant's preparation and filing of its motion for partial summary judgment seeking dismissal of the plaintiff's '402 and '669 Registration infringement claims.

### III. CONCLUSION

Federal court litigation is not for the faint of heart. It is taxing, both emotionally and financially. As stated earlier, neither side in this hard-fought case came out a winner. Modern Fence failed in its effort to prove that Qualipac infringed its '000 and '668 Registrations. To the contrary, Qualipac was successful, as a result of the jury's verdict, in having Modern Fence's '000 and '668 Registrations cancelled. On the other hand, Qualipac was unsuccessful in its effort to have Modern Fence's '402 and '669 Registrations cancelled. Qualipac was also unsuccessful in its effort to seek damages from Modern Fence for attempted monopolization. If the jury's verdict said anything, it was to tell the litigants to stop fighting, get out to the market place and compete, and may the better fence hinge win. This court joins in that call. Let the litigation cease and competition reign.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for attorneys' fees and sanctions be **GRANTED IN PART AND DENIED IN PART** as discussed herein;

**IT IS FURTHER ORDERED** that within fourteen days of the date of this order, the defendant shall serve on plaintiff's counsel a bill for reasonable attorneys' fees actually incurred in connection with the preparation and filing of the motion for partial summary judgment seeking dismissal of the '402 and '669 Registrations;

**IT IS FURTHER ORDERED** that, within fourteen days of receipt thereof, counsel for the plaintiff, i.e., Attorney Philip P. Mann and The Mann Group, shall pay such bill.

**SO ORDERED** this 24th day of June 2011 at Milwaukee, Wisconsin.

> **BY THE COURT:**
>
> s/ William E. Callahan, Jr.
> WILLIAM E. CALLAHAN, JR.
> United States Magistrate Judge